may please the court Joe Sherman on behalf of Ms. Elizabeth Reynolds and the 9.989 acres taken for a 42-inch high-pressure natural gas pipeline the again the the 702 here is going out of its way to address disputed facts I think it's a sign of intelligence when someone tells me they don't know something if I ask you you know a question and they say I don't know then I've immediately got a high regard for the folks I'm speaking with because people don't know everything I think it's very hard to know everything and so to resolve disputed facts without a 71.1 hearing where we're allowed to put on evidence and cross-examine and to make conclusions about facts based on different arguments I think it's inappropriate and so the two issues in this case is one about comparable sales which was mentioned briefly about whether or not they were a before sale or an after sale and the other ones related to highest and best use and the comparable sales is I think the most nefarious issue plaguing this this specific track because at 547 of the record Mountain Valley Pipeline's appraiser has an interview with the seller of the property who says he knew about the pipeline easement before he bought the property so that is evidence of what a buyer would pay knowing it was going to be encumbered by a gas pipeline their own evidence in this case indicates that the buyer knew he was buying something with a pipeline and he didn't care because he's going to use it for bonfires and and volleyball so yeah to their their intellectual dishonesty of their argument bears out on the next sale a few months later where they're arguing a different reason to consider that one and after sale these are all disputed facts about these transactions and I think ultimately the the mystery of eminent domain is that you're trying to capture what the market would do before condemnation without known about the project and what it would do after knowing about the project and that's why these sales are valid data points because the fella knew he was buying something with an easement and then four months later after he had bought the first one which he said he knew had an easement he was substituted into the condemnation he was served with the complaint then he bought another one adjoining an adjoining the first and there was collateral litigation about whether or not he knew he was buying it he ended up making a title insurance claim he had a moral hazard involved and the ultimate reality is that that one was well after the condemnation had formally occurred the district court had ruled on possession of the easement and so both of those transactions in the public record demonstrate transactions with a market participant with knowledge that he was buying a piece of property with a pipeline easement and so that's some of the best evidence you can get for an eminent domain case which is hard to capture this mystery of what would you pay before what would you pay after you got two sales proximate to the subject property within mile of the subject property that sold with knowledge of the pipeline easement and so the 5th 7th and 11th circuits have all said that attacks on comparable sales are weight that go to the jury if that's what they are their arguments their attacks on the weight this circuit in 2007 and 2017 said the same thing in the Columbia gas and the East Tennessee natural gas pipeline cases and so if there was a 71.1 hearing on whether or not this buyer knew then we'd have the opportunity to cross-examine him present evidence if if if if I think if the court's allowed to do it on 702 then we don't have any of that that benefit and in her having some experience watching this collateral litigation doesn't help us at all especially given the fact that she didn't rely on the competing claims to resolve that issue the just answer the earlier question concern well at least you're addressing it is that if the court conducts a 702 analysis that's a gatekeeping admissibility function right once you determine it's admissible you then can do a 71.1 analysis to determine in terms of the data the findings does the support conclusions and that sort of thing my question is I'm not sure you argue this and then you brief but I'm not sure you determine this if what what sort of facts can the judge determine at a 71.1 stage that's different than what the jury should be determined how do we differentiate that it's it's tricky and I think that the good example is in their brief they mentioned that there was screening of evidence as it relates to highest and best use in two other cases and one of them was a larger partial issue and another one was a boundary line adjustment and I think a third one had to do with a similar application of highest and best use and so to the extent that those are facts and disputes she wanted to have evidentiary hearings prior to putting it to the jury and that worked very very well because then she was able to develop a comfort level with the evidence whereas you just until they nitpick the report you know it's hard to anticipate every argument against it. What makes it really difficult is this particular rule that prohibited the main cases allows the judge to be to try a fact for those issues other than just compensation but you know you in court that's why you're there is on just compensation. Right. So if the judge makes every determination . . . Right. For just compensation . . . Right. And then hand it to the jury . . . Right. I mean does the jury have a choice if that's the rule but what you didn't argue and what it seems to me could be the case is that there are some facts that are so closely aligned with compensation . . .  That that ought to be a jury . . . Absolutely. You didn't argue that there. I didn't find that in your brief but that seems to follow that there would be some things . . . Right. That are really going to the ultimate determination of is this just compensation . . .  That the jury even though it's disputed that's something for the jury to consider . . .  The weight of this and what does it mean for just compensation . . . Right. But whoever wrote this rule and it's been going on it created this conundrum but I think it seems to me that's a logical determination but it does create the confusion of well what is an issue that is so aligned with compensation that the judge ought not to be determining that . . .  I mean if . . . But then there are some in which if you do have a dispute because there's a 701 issue .1 that's dealing with issues that are not dealing with just compensation it seems to me . . . Right. But all of them do really . . . Well, and that's why I think that these hearings have gone favorably in that once the judge hears the competing evidence and realizes that it is intertwined with compensation and it's not a clear binary yes or no black or white determination then she can put it to the jury with confidence that it'll work out. You don't . . . The gatekeeping function and the idea of trying facts before they get to the jury I think makes sense if used properly and I think cooking it all up together doesn't and that's why we end up in situations like this where we're going to end up doing it twice instead of doing it right and so I think . . . So can the district court rule on comparability of sales at the 701.1 stage or is that necessarily a jury issue under the Reynolds case? Well, and so to answer your question I think that the sites in our brief about comparable sales going to the jury all dealt with attacks on their weight versus the sites in their brief about the judge excluding comparable sales dealt with threshold issues of whether or not it was an arm's length transaction. Something that is dispositive of its utility to the jury could be an appropriated 71.1. If it was found to not be an arm's length sale it's not representative of market transaction because I gave it to my brother for a song then . . . Sorry, that seems like so close to a determination about the determination that the district court was looking at here sort of the circumstances of the So, it seemed to me that what was going on here are these really impacted at the . . .  Did the . . . That that would go more with was this an arm's length sale? Right. So you think that that's not appropriate under 702 but it might be appropriate under 71.1? Exactly. So if the district court here had said exactly what it said but said I'm doing this under 71.1 not under 702 that would be okay? I think if . . . I mean you would disagree but it would be procedurally correct. Close in that I would have had a chance at the 71.1 hearing to put on evidence, bring in the brokers. The appraisers had the benefit and he says so at the beginning of his assumptions and conditions that he talked to the brokers in the transaction and that's what their appraiser reported on page 547 that speaking to the brokers of the transaction there was knowledge of the pipeline. So I think that if she did the 71.1 hearing then you have the opportunity to put on evidence and cross-examine witnesses and you're able to make a much better decision versus arguments on brief in 702 where you're really just weighing evidence without knowing what the evidence would bear out in  Can you talk a little bit about the conceptual subdivision? Sure. And do you think that is an inappropriate considering whether there's any reasonable probability that there will be either the zoning changes or the new public roads that it's also inappropriate to consider that under 702? Because I feel like a lot of courts do consider that under 702. Sure. I think that the 702 is, so the methodology of Mr. Garrell's report again was to figure out what the highest and best use was and then find sales representative of, so the methodology was sales before that are prime for development and then sales after that lose that utility. He didn't count up, I think it would have been inappropriate for him to do a subdivision method which was mentioned in our reply brief which is a disfavored methodology where you add up all the lots and then you figure out the costs of building, the value of the lots and you do that math. So I think that the idea of the conceptual subdivision is that he had to figure out what the highest and best use was. If you notice in his report, he doesn't once say that these lots would sell for $40,000 each. But he says that the highest and best use is this kind of high-density residential development which appears currently not to be permitted under the zoning regulations. I disagree with that. I think that it's, I think it is clearly permitted, it just requires approvals. And so I think that's where the error of law is in that the existence of approvals doesn't mean that they're speculative, that they would be approved. Eight out of nine of the last subdivisions did have new roads. But it's not like the expert report says that. The expert report just from reading it, you can't even tell that the expert report is considering that something will be required before this can be done. I think the Shawn Horn report does. I think the engineer says that an internal road network would be developed and that the cost would be typical of development in this area. But then after it's developed it has like the state has to decide to sort of take ownership of those roads, right? The state has to accept the road, it has to be built to their standards and Mr. Gruelle researched the subdivision activity in the last five years and eight out of the last nine were and that's in the Gruelle report. That's in, yes, it's in the Gruelle report and it's and it's detailed in my brief or in the record on 346 to 352. So the Gruelle report says like we figured this out and we understand that for under the zoning regulations there's going to need to be a sort of a publicly adopted and owned road and that happened eight out of the last nine times. No, the Gruelle report says that he studied all the subdivisions, he went to the county and put all the public data in the last five years and he found that there is a demand for new development that the Roanoke County is growing five percent a year and that they have developed 476 new tax parcels in the last five years and that here are the tax maps numbers for the data that he relied on and then they nitpick the report and then I just think it's very hard to anticipate all of the attacks on the report until they come in and then if they want to. I mean I like again I am no expert in this but when I read the Gruelle report it seemed not at least on its face to take account of the fact that as currently zoned and on this wasn't going to work unless the state could be persuaded to approve a new public road it just it wasn't in it. Well he's incorporated Sean Horn's report which does say you need to build a new road the cost would be typical and it'd be reasonable and probable in his experience in the last four years in the Roanoke Valley this is how you do it. I also didn't get from that any notion I that just sounded to me like we'll have to build a road and it'll cost as much as it usually costs but there wasn't anything about we'll need to get these state approvals. Well and I think that's what the the market takes for granted that the attacks from clever lawyers make look that you know there's something going on here that doesn't normally go on and if I run out of time could if I just half a minute to continue on that thought the ultimate reality is that's how business is done and that's why that's I think that the biggest mistake that a landowner could make on the front end is detailing the cost. I think they're inviting an error in that those those cases started in our reply. I didn't think the district court was faulting it for not detailing a cost. I thought the district court faulted it for not detailing how you would get from current public roads and zoning regulations why it was reasonably probable that you could get the changes you would need to go ahead and build. And that's why I think it's arbitrary that she gave us these screening hearings in the other two cases and not in this one because those hearings really helped her develop the comfort level for the evidence because and I think that's how it's best done to hold all these mysteries and truths together because the experts do take it for granted. They do it every day. They see it every day. They know that if you're willing to bite the bullet on building a new road the state's happy to let you develop new. The localities love it because it increases the tax base when you develop new land and they're not making a whole lot of more land so you got to build new roads to get to what land does exist to continue to grow at 5% a year so the market takes it for granted for some degree and the law requires comparable sales so the law in the reply brief clearly says you're not allowed to go line by line and add up what's the value of each lot, what's the cost of building the road, what's the profit. They think that that is speculative and requires too many leaps in in logic to put in front of a jury and so the proper methodology is to figure out the highest and best use and then not add it up line by line but to find sales that were also primed for development and use those to develop a per acre value and then likewise in the after. So he didn't use the map for anything other than to determine what he's looking for as far as data. But Mr. Chairman, the evaluation was based on high density, correct? Yes for rural residential. Right, high density. But even as the colloquy you had with Judge Harris about what the report said, even if you got through the gauntlet of the variance and the state accepting the roads and all those things, is there an issue about because of the setback required that you wouldn't be able to do better than low density? No, I think that's again a really misleading argument because with the new road, the argument is 15 of these lots don't have any road frontage. Well that's that's not true. The conceptual plan anticipates that the new road creates road frontage and so that's why the internal road network creates road frontage. And actually the developer says in his report that you could have 36. If you maxed out your density you could have 36. He said I don't think that's appropriate for this market. This market likes large lots so I'd recommend 21. Something to that effect. So it's not a maximum. It's not an over-the-top application meant to go beyond what's realistic. I think that it's meant to capture what the market would do in this situation. Mr. Horn is a professional. He's not a professional witness. He is doing most of the development in the Roanoke Valley and so to hire him I said what would you do here? He said and he took it and he went with him he brought it back and said this is what I do. And so it's a good effort to capture what the market would really do and I think that Mr. Durell's report only uses it to figure out what data he's looking for. He doesn't count up the lots or the cost. He's just gone out and found four other sales, three other sales of land that was primed for development and used that to come up with a per acre value. Thank you, Mr. Chairman. Yes, sir. Mr. Massey. Thank you, Judge. Wade Massey for Mountain Valley Pipeline. Let me start with the conceptual subdivision if I may. This was one of the grounds that Judge Dillon excluded the plaintiff's expert on. The expert argued for a conceptual subdivision of high-end residential development and using that concept that essentially doubled the property value. It took it to about $7,500 per acre versus about $4,000 per acre from the other appraisers. It's of course based on a subdivision that does not currently exist and a network of roads that does not currently exist. There are no internal roads on this property now and under the law that is pretty firmly established in these cases, the highest and best use is presumed to be the current use and the burden is on the landowner to prove a different use and one that is reasonably probable, number one, and reasonably probable in the reasonably near future. So a double requirement. The landowner did not call any developer or contractor. There's no feasibility study. They called an appraiser and a landscape architect. The landscape architect drew a drawing of lots. There's no report on development cost or lot prices. The proposed use is dependent entirely not just building these roads but that these roads become public roads, that they're accepted into the system and this is all occurring in a, uh, zoning district AG3 Agricultural Rural Preserve which is set out in Appendix 557 and the purpose of it is to maintain the existing agricultural lands, to prevent encroachments of incompatible land uses, to minimize the demand for unanticipated public improvements, to reduce development densities and discourage large-scale development. That's, that's where all this is supposed to go. You know, to, to, to set up a subdivision is not an easy thing to do. Municipalities will have probably dozens, I don't know, sometimes hundreds of years of qualifications and approvals that you have to get. You've got this, and I'm only, I haven't seen this land, but it seems like to me the way it's described, it's a pretty beautiful place up here and if you want to put a subdivision there, it's a long road to get it, but if you're going to start it, you want to start with the proposition you can get it and it doesn't seem logical to me that at the main stage you would have to show that you can meet every one of those steps to get it. What it seems to me is, you know, once you kind of make it possible or logical that it can happen, if you think one can't be there, maybe you need to tell, no, there's no way that there's a subdivision going to be built here, or no, the amount of approval, the number here, they can't meet those, but when you start from the beginning and you're looking at this beautiful piece of property that looks like it can be a subdivision, but you're correct, you can't show that you're gonna get all those approvals, but why would you need to show it at that stage? I mean, it's your land, but that's an option that potentially can be taken away or will be taken away from it. Is that not something that can be considered at least for purposes of just compensation, which gets into the question of what does the judge decide at 7.1, what does he not decide? And that's where it gets muddled and I think they left that deliberately so it would muddle this thing up. What is it, what evidence goes to the ultimate determination of just compensation and what does not that the judge can settle for himself? So, that's where we are and, but, but you don't maintain that a landowner would have to make a showing on every stage of an approval to say, okay, a subdivision can be built here. Do you? I understand your point and I think it's a good one, a fair point to make that you're not doing this as the case is developing. You're talking about what might happen in the future, so you have to anticipate somewhat for that, but I think you start with the existing zoning that I just read. I think that's a pretty solid starting point on what you have. I think you've got to come forward with some proof with some, through somebody that this is going to occur under the court standard . . . It's a different thing going to seem to indicate, well, you've already made the plans and it's moving forward to doing it, but, you know, you can have hundreds of acres in a beautiful area and you just haven't done anything with it just there, but you know it can be this and there's that thin line between speculation and stuff in the future that could, but it's also, but once you put it, you take the can away. There's no can going to be here if they're proposition or you lessen the can by putting a pipeline and a road with trucks and stuff through it, you know, which is different. I understand and the issue of course is do we value this property as it is now on its current use, the way it sits now with all its pluses and minuses for just compensation? It just doesn't seem fair. I mean, if you have a cow pasture out in some of these areas, it is absolutely beautiful. Let's say it's about five miles outside of a major city and you know it's booming and it's zoned agriculture. Are you saying that the valuation of that can only relate to it being agriculture even though everybody with eyes is looking over there thinking, man, that could be one mean subdivision out there with a whole lot of money on it and that's different than the cow pasture. You're not saying that, are you? No, I'm not saying that because even in the agricultural district, you can have some division of property. Some division of property is allowed, but on this track, it's not allowed without some set of roads, public roads that do not currently exist. And there's simply no evidence in this record to support that that's going to occur on this property. Is that what you need, that it's going to occur or it can occur? There's nothing that prohibits them from putting a road on the property, is my point. And if you've got property, okay, for this, you've got to have a road. But there's nothing prohibitive from you or you could put a road there. And I know that sounds speculative when you get into the could business, but you get where I'm going with this? You tie it in to what is being used as now. This is mountain property. I know mountain property, it sounds like where I grew up on the flatlands, we didn't think much of it in the old days. But now, mountain property, especially maybe not so much in North Carolina with the hurricane, but we're going to get it back. But it's pretty valuable stuff. No, I think you take into account its potential. I'm not saying that. Okay. Okay. But I think . . . Counsel, can I ask you a question just about this question? Is it, whether it can occur, the potential, whether it will occur? The district court thought the standard was, is there a reasonable probability that it will occur in the reasonably foreseeable future? Is that, do you dispute that that is the standard? I think that the words that you just said are the words directly from the cases. I mean, that it's reasonably probable in the reasonably near future. But what is being talked about is the highest and best use. Yes, I understand. That that use is one that is reasonably probable in the reasonably near future. I just want to make sure I'm understanding the legal standard and what is contested about it and what is not. And I will just say what the district court said. The district court said, I think maybe there's a presumption that the way it's being used now is the highest and best use. But you do look at the potential to the extent it is reasonably probable in the reasonably foreseeable future.  And you agree with that? I do. Okay. So, you don't need more than that. You don't need more certainty than that. No, I don't think you do. I think that is the standard that you just described. And, I mean, this particular track can have, can be subdivided, right? Because it is on a public road in part. But this concept that was brought forward here is not that. It, it's for a, another subdivision, a twenty-two lot subdivision that are on roads that do not currently exist. That, that was the judge's one problem. The other problem the judge had with this valuation and, and report from the expert dealt with the sales and you've heard about those somewhat already. But the expert based his opinion on three sales and sale one was a, was not a after sale. It was a before sale. So, here's what we have. We have experts saying this property is worth so much and now I'm going to value it after, in the after condition. And here's the sale I'm using. But the sale that the expert used was a before sale. Apparently unknowing. And I don't call that nit, nitpicking. I think that's a pretty important fact. In fact, it's a key fact for it to be comparable at all. It must be in the same condition. It must be encumbered. It must have this easement or an easement on it. If it doesn't, it, you can't use it. And that's, those are the facts on that one sale. On the second sale, it, it was one where there was a disagreement between the parties about who got the just compensation. I'm, I'm getting the just compensation for this easement and the buyer said, no, I'm supposed to get it. And so, they didn't have any connection between themselves on that point and thus, it's really not a valid sale to, to value property from. That was, that was the judge's conclusion. All of the facts about that are, are in the record in the main case. They're in the record in the main condemnation case. I don't know if you remember, but there was a, a case 17-492 that's the main condemnation case that you heard the appeals from previously. And then, these other cases were made separate cases by the district judge for efficiency purposes and management purposes. But the evidence about these two sales that I mentioned is, is in the record and, and of course, uh, uh, Ms. Reynolds is a party to that as well and she's a party to that 17-492 case where all this was presented. So, I think the judge was within her discretion on this point. Uh, she said, you know, two of your three sales are not right and a sample size of one and she described it as not sufficient. I think that's, uh, the judge's discretion to make that call. It's actually her duty to make that call under Rule 702 and the court reviews that for abuse of discretion which I submit is not, not here. Unless the court has more questions of me, I'll sit down. Thank you, Judge. Thank you, Mr. Massey. Thank you. I want to note that the, I think the case could have gone to trial without the subdivision plan if she felt like that was too prejudicial. All of Mr. Giroir's sales on the before condition using the methodology of substitute sales, sales from the market, were agricultural sales of large acreage that had road frontage, which is what this one was. So, even if she felt like the, the, the map was too prejudicial, she could have excluded that without, without disturbing the methodology of, go ahead, Judge. Oh, I'm sorry. So, I thought that, so, I thought that the way it worked was first the expert says the highest and best use is this sort of high-density residential development and then he went out and found other properties that could be developed for high-density development. Is that not right? More or less correct, yes. Okay, so, but so if the district court properly said, no, no, like this whole high-density thing, too speculative, there's not a reasonable probability, then wouldn't the comparable sales be off because they did assume that you could get high-density development? Well, and that's where I think she's made an error of law in that the, the, or arbitrarily excluding the, the, the highest and best use of this, he's not saying this specific concept plan is the highest and best use. He had an engineer draw it to confirm that it could be done, that it was reasonable and probable. But, but so, so if the district court, then I think I misunderstood what you said. You're saying just this map would stay out, but if the district court properly excluded Gruelle's determination of highest and best use, that would mean the whole before value thing was wrong. That would be problematic, and I think that's why, where, where his report is compelling. At 143 of the joint appendix, he details the, the last five years of real estate development in Roanoke County, including a 24 lot subdivision, gives the tax map, a 14 lot subdivision gives the tax map, 20 lot subdivision, tax map, 20 lot subdivision, tax map, 15 lot subdivision, 25 lot subdivision, 14 lot subdivision, 30 lot subdivision, 23 lot subdivision. So I don't think that his high density is outside of the markets, what the market's been absorbing the last five years. I think it's entirely consistent. He mentioned the, the Stone Ridge sub residential subdivision, which is more than five years old, but within a half mile of the subject property and was built with new roads. Okay, I almost hate to ask because there's enough moving pieces of this case already, but just hypothetically, if, if the district court properly excluded all of the experts before value, just hypothetically, if the district court was right that there was no basis for the experts highest and best use pre-taking valuation, if that was right, is that enough to say Gruelle's entire report stays out or does the post-taking value still, is that, does that still come in? Do you know what I'm saying? It would still come in. There was a case similar to that hypothetical in this court earlier this year that. That mixing and matching. Right, exactly. And so, they're independent questions of fact. The before value is what is the value of the property before with no project influence versus what is the value of the property after considering all of the impacts of the project. So, the way that, I feel like I'm about to make some kind of fundamental math error or something, but I am so confused by this. The way the district court thought about it, at least, and this doesn't address Judge Wing's questions about the procedural posture, but that it was once you take Gruelle out, you're left with Thompson, that Thompson governs. So if you take, I'm going to get this wrong, if we're assuming just for a minute that Gruelle's opinion has been excluded on the pre-take value, so we're going with Thompson's version of pre-take value, and that would be it seems like the landowner would then do better if you also took Thompson's post-take value number because then the differential would be bigger. Does that make any sense? That may well be the case. I don't have that in front of me. Okay. You may well be right. In which case, what would happen? I guess then the landowner might just say, fine, we'll just go with Thompson. Or they would say, Judge, that this is all the remaining evidence and we'll stipulate to the highest possibility. Okay, okay. I think that's what's problematic about excluding Gruelle, who uses the proper methodology, who finds sales that are- That's why it's weird to take one number, to exclude as to one number, but not the entire calculation. Well, I don't think that either should get excluded. I think that if anything, the least restrictive means would be to say, look, that map hadn't been built. That's not real in that it doesn't currently exist. However, everybody agrees that Mr. Gruelle found sales of agricultural land. Everybody agrees that the property's got 3,000 feet of road frontage and it's suitable for development. So using sales that are suitable for development is proper and appropriate, given that his highest investment use analysis that I just read to you detailed nine other subdivisions with 20 acres. And so the 20 doesn't need to come in if she feels like that's prejudicial. The number of lots that Mr. Horn drew up, the benefit of drawing it, the concept plan, is to show that it is reasonable and probable, to show that it can be done to an engineering specification. And so I think that by doing it in the best practice, it's created this argument that is not reflective of market value, which is the goal here, is to find out what the market would do. And so Mr. Gruelle did market research that said, we've gotta look into the subdivision because there is a market for subdividing real property in Roanoke and it's a good place to live. And then the local engineer who does most of the local development drawing said, here's how I'd do it based on the hillside on this side of the frontage. I would do this as phase one, and then once you've done that, then do this as phase two. He's just using his experience to do what's actually market value. And so I think that both of these would be better addressed with a 71.1 hearing, to your point, Judge Winn, which would allow cross-examination, which would allow evidentiary. I'm going over, I'm sorry, I should stop. If you've got any other questions. I didn't finish the last thought about the reference to Judge Winn. Well, I think that our brief at page 18 and there's a page 14, both refer to other cases where that went really well. And in the East Tennessee natural gas case from 2007, which I was reading from earlier, had the similar phenomenon where the judge heard screening evidence first. So I think mixing it all up is what causes the mystery. Sometimes we simplify mysteries of life because it's easier on us. It's more comforting to think that things are binary when it's really much more dynamic. And so I think that remanding to require that if she's going to rule on disputed issues of fact, rather than methodology, that it have a 71.1 hearing. I would be grateful. Thank you, Your Honors. Thank you, thank you, Counsel. Well, the sun being close to crossing the meridian, we will take a brief recess. And we'll come down and shake Counsel's hand. This Honorable Court will take a brief recess.
judges: Roger L. Gregory, James Andrew Wynn, Pamela A. Harris